IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRIS DEL CARMEN CASTILLO,<br><br>   Plaintiff,<br><br>  vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>   Defendant.<br>_____ / | No. C 10-4407 MEJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>**ORDER GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Plaintiff Iris Del Carmen Castillo brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the decision of the Commissioner of Social Security, Defendant Michael J. Astrue, denying her claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 31, 36. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' papers, the administrative record, and relevant legal authority, the Court hereby DENIES Castillo's motion for summary judgment and GRANTS the Commissioner's cross-motion for summary judgment for the reasons set forth below.

## BACKGROUND

Castillo was born on December 9, 1954. Administrative Record (AR) 137. She completed high school and two years of college in Nicaragua. AR 143-44. From 1990 until 2000, Castillo

worked as a Laundry Worker for the City and County of San Francisco Department of Public Health at Laguna Honda Hospital. AR 267, 274. The record indicates that Castillo injured her right ankle in November 1990 while pushing a 400 pound laundry cart, and later had injuries and/or pain in her shoulders, hands, back, and neck. AR 274. She had foot surgery in 1990, back surgery in 1994, right wrist surgery in 2002, and left wrist surgery in 2004. AR 275.

Castillo filed an application for disability insurance benefits (DIB) and supplemental security income (SSI) benefits under Titles II and XVI of the Social Security Act (the Act) on October 30, 2007, alleging disability since December 5, 2000. AR 45, 130-31, 137-40. The application was denied initially on January 24, 2008, and upon reconsideration on April 24, 2008. AR 156-57. Castillo thereafter filed a written request for a hearing before an Administrative Law Judge (ALJ) on June 25, 2008. AR 171.

ALJ Randolph Schum conducted a hearing on August 21, 2009. AR 141-55. Castillo appeared with her attorney, Arthur Levy, and the ALJ heard testimony from Castillo and Vocational Expert Mary Ciddio. AR 28, 141. An interpreter was provided at the hearing. AR 141. On November 2, 2009, the ALJ issued a partially favorable decision. AR 81-90. In his decision, the ALJ found that Castillo had not engaged in substantial gainful activity since her alleged onset date of December 15, 2000, and had the following severe impairments: "residuals of carpal tunnel surgery and residuals of right ankle fracture." AR 83-84. The ALJ held that Castillo's impairments did not meet one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, and that she retained the residual functional capacity (RFC) to perform light work. AR 85. Based on this RFC, the ALJ held that Castillo was unable to perform her past relevant work as a laundry worker. AR 88. The ALJ also found that, prior to June 8, 2009, there were jobs that existed in significant numbers in the national economy that Castillo could perform. AR 88. However, as of June 8, 2009, Castillo's age category changed, and beginning on that date, the ALJ determined that Medical-Vocational Guideline Rule 202.04 directed a finding of disability. AR 88-89. Thus, the ALJ determined that as of June 8, 2009, no jobs existed that Castillo could perform. AR 89. The ALJ concluded that Castillo was not disabled prior to June 8, 2009, but that she became disabled as of that date. AR 89.

On December 31, 2009, the ALJ reopened the November 2, 2009 decision to correct an error. AR 28-29. In the revised decision, the ALJ noted that Castillo's date last insured was December 31, 2005, and that she was therefore not disabled prior to the expiration of her date last insured. AR 28-29. The ALJ revised the November 2 decision to reflect a finding that Castillo was not entitled to a Period of Disability and/or DIB with a later onset date of June 8, 2009.[1] AR 29. Castillo subsequently requested a review of the ALJ's decision, but the decision became final when the Appeals Council declined review on June 11, 2010. AR 4-7, 16.

Having exhausted her administrative remedies, Castillo commenced this action for judicial review on September 30, 2010. On September 12, 2012, Castillo brought the instant motion for summary judgment. Dkt. No. 31. On September 27, 2012, the Commissioner filed a cross-motion for summary judgment. Dkt. No. 36.

The Court shall address additional facts as necessary in the remainder of this Order.

## LEGAL STANDARDS

**A.  Standard of Review**

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42 U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence" means more than a scintilla, but less than a preponderance, of evidence which a reasonable person might accept as adequate to support a conclusion. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The court must consider the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However,

---

[1] In order to collect DIB, a claimant must establish that she became disabled on or before the expiration of her insured status. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). In order to receive benefits after the expiration of her insured status, a claimant must prove that the current disability has existed continuously since a date on or before the date that her insurance coverage lapsed. Furthermore, a claimant's disability must continue at least to within 14 months of the date of application for Title II disability benefits. 20 C.F.R. §§ 404.321(c), 404.325, 404.621(d); *Flaten v. Secretary of HHS*, 44 F.3d 1453, 1458 (9th Cir. 1995); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989).

where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.* Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990).

**B.     Standard for Establishing a Prima Facie Case for Disability**

Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must apply a five-step sequential evaluation process. 20 C.F.R. § 404.1520. During the first four steps of this sequence, the claimant bears the burden of proof to demonstrate disability, but the burden shifts to the Commissioner at step five "to show that the claimant can do other kinds of work." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988)).

First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). Second, the claimant must have a severe impairment. *Id.* § 404.1520(c). Third, if the claimant's impairment meets the duration requirement and meets or equals an impairment listed in Appendix 1 to the regulation (a list of impairments presumed severe enough to preclude work), the claimant will be found disabled without consideration of age, education, or work experience. *Id.* § 404.1520(d). Fourth, if the claimant fails to satisfy step three, the ALJ will assess and make a finding on the claimant's Residual Functional Capacity (RFC). *Id.* § 404.1520(e). The RFC measurement describes the most an individual can do despite his or her limitations. *Id.* § 404.1545(a)(1). If the claimant has the RFC to perform past relevant work, the claimant will not be found disabled; if not, the ALJ proceeds to step five. *Id.* § 404.1520(f). Fifth, if the claimant is able to adjust to other work in the national economy, the claimant will not be found disabled. *Id.* § 404.1520(g)(1).

**ANALYSIS**

In her Motion for Summary Judgment, Castillo does not raise any arguments specific to the ALJ's decision. Instead, she states that she has been disabled since December 5, 2000, and argues generally that there is "conclusive evidence" that she has been disabled since November 19, 2007. Pl.'s Mot. at 6. In addition, she attaches certain documents which are also part of the Administrative Record.

In his cross-motion, the Commissioner contends that the ALJ's decision is supported by substantial evidence and free of legal error, and that substantival evidence supports the ALJ's finding that Castillo could perform work through June 7, 2009. Def.'s Mot. at 1.

As Castillo has provided no specific arguments, the Court shall review the ALJ's decision as a whole to determine whether it is supported by substantial evidence and free of legal error.

**A. Step One**

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(b). Here, the ALJ found that there was no evidence that Castillo had engaged in substantial gainful activity after the alleged onset of disability, December 5, 2000. AR 63.

**B. Step Two**

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Act.[2] If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). In his decision, the ALJ found that Castillo's impairments, in combination, met the severity requirement. AR 64. These impairments include residuals of carpal tunnel surgery and residuals of right ankle fracture. AR 64, 351, 444,

---

[2] At step two, "severe" means any impairment or combination of impairments that significantly limits the claimant's physical or mental ability to perform work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). This is a de minimis inquiry designed to weed out nonmeritorious claims at an early stage. *Bowen v. Yuckert*, 482 U.S. 137, 148, 153-4 (1987). "Only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits" at step two of the analysis. *Id*. at 158 (citations omitted).

474, 582. However, the ALJ determined that Castillo's impairments of hypertension, gastroesophageal reflux disease (acid reflux), and glucose intolerance (possible diabetes type 2) were not severe impairments. AR 64-65.

As to hypertension, the ALJ observed that Castillo had been diagnosed with the condition, but the medical evidence established that this impairment was well-controlled. AR 64. The Court finds that this is supported by substantial evidence, as reflected in the treating records of Linda Deivert, PA-C, and Robert Rowley, M.D. AR 346, 348, 356, 357, 368, 386. Castillo also admitted at the hearing that this impairment was controlled with medication. AR 146. Likewise, Plaintiff testified that her acid reflux was also helped by medication. AR 146. The medical evidence supports this as well. AR 420. As to glucose intolerance, the treating records from Ms. Deivert and Dr. Rowley indicate that this impairment was assessed as stable. AR 338, 343. Plaintiff also testified that she did not take medication for this and just controlled her diet. AR 146. Accordingly, the Court finds that the ALJ's determination at step two is supported by substantial evidence and free of legal error.

**C. Step Three**

If the ALJ determines that the claimant has a severe impairment, the ALJ must next determine whether the claimant has an impairment or combination of impairments which meets or equals an impairment in the Listing of Impairments (the Listings).[3] 20 C.F.R. § 404.1520(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, she is conclusively presumed to be disabled. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993). If a claimant has more than one impairment, the Commissioner must determine "whether the combination of [the] impairments is medically equal to any listed impairment." 20 C.F.R. § 404.1526(a). The claimant's symptoms

---

[3]The Listing of Impairments describes impairments for each of the major body systems that the Agency considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 1525(a). Within each listing, the Agency specifies the objective medical and other findings needed to satisfy the criteria of that listing. *Id.* § 1525(c)(3).

"must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir.1995) (citations omitted). A finding of equivalence must be based on medical evidence only. 20 C.F.R. § 404.1529(d)(3).

Here, the ALJ determined that Castillo's severe impairments did not meet or equal the requirements of a listed impairment, whether considered alone or in combination. AR 65. The ALJ found that Castillo's history of carpal tunnel syndrome did not fulfill the requirements of any neurological listing found in section 11.01 of the Listings. AR 65. The ALJ also found that her history of ankle fracture did not meet Listing 1.02(A) as "she did not have major dysfunction of one major peripheral weight-bearing joint, such as the ankle, as an inability to ambulate effectively did not occur." AR 65. The ALJ did not provide further discussion regarding Castillo's impairments in this portion of his decision, but Castillo has offered no theory as to how her impairments, either alone or combined, equal a listed impairment. Nor has she pointed to evidence that shows that her combined impairments equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (finding that the ALJ did not err in concluding that the claimant's impairments did not equal a listed impairment, despite the ALJ's failure to discuss the effects of the impairments or compare them to any listing, where the claimant offered no theory, plausible or otherwise, as to how the impairments combined to equal a listed impairment, nor did the claimant point to evidence that showed that his impairments equaled a listed impairment). On the contrary, the ALJ compared Castillo's impairments to specific listings and, as discussed at Step Four below, properly considered the objective medical evidence in making his determination. Further, as discussed above, the ALJ properly found that Castillo's hypertension, gastroesophageal reflux disease, and glucose intolerance were not severe impairments. AR 64.

Based on this analysis, the Court finds that the ALJ's determination at step three is supported by substantial evidence and free of legal error.

**D. Step Four**

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient for her to perform past relevant work. 20 C.F.R. § 404.1520(e). RFC

1 refers to what an individual can do in a work setting, despite limitations caused by medically

2 determinable impairments. 20 C.F.R. § 416.945(a). In assessing an individual's RFC, the ALJ must

3 consider "his or her symptoms (such as pain), signs, and laboratory findings together with other

4 evidence we obtain." 20 C.F.R. § 404, Subpt. P, App. 2 § 200.00(c).

       1.    RFC

In his decision, the ALJ determined that Castillo could not perform her past relevant work, but retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b).[4] AR 65, 68. In her Motion, Castillo argues she cannot work because of her impairments, including carpal tunnel, impaired shoulders, back problems, right ankle impairment, reduced colon, and gas reflux. Pl.'s Mot. at 6. However, she cites to no evidence in the record that supports her argument. The mere existence of a condition or limitation is not per se disabling. 42 U.S.C. § 1382c(a)(3)(A) (requiring "medically determinable physical and mental impairment, which results in marked and severe functional limitations"); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Disability is established only if there is proof of related functional loss that prevents a claimant from working. *Barker v. Sec'y of HHS*, 882 F.2d 1474, 1477 (9th Cir. 1989); *Sample*, 694 F.2d at 643.

Further, the Court finds that substantial evidence in the record supports the ALJ's finding. A state agency physician, Edward S. Gallagher, M.D., reviewed the medical records on January 23, 2008 and opined that Plaintiff retained the functional capacity to: lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours during an 8-hour day; sit for 6 hours during an 8-hour day; push and/or pull with upper extremities; and frequently climb, stoop, kneel, crouch, and crawl. AR 447-52. Dr. Gallagher's description of Plaintiff's functional capacity is consistent with light work activity. 20 C.F.R. § 404.1567(b). In December 2007, Dr. Gallagher concluded that

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b)

Castillo's RFC was at the light level with "frequent but not constant use of both hands for handling and fingering." AR 446.

In evaluating Castillo in October 2006, Aubrey Swartz, M.D., advised her that her residuals were "quite mild and not to be the level that would pre[v]ent her from re-entering the work force." AR 485. Dr. Swartz concluded that Castillo's subjective complaints outweighed her objective findings. AR 485.

The ALJ also considered but rejected the opinions of Stanley Baer, M.D., and Marjorie Oda, M.D. "Cases in [the Ninth Circuit] distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830. Here, there is no dispute that Dr. Baer is Castillo's treating physician. Def.'s Mot. at 9. As to Dr. Oda, she treated Castillo for at least nine years and is at least an examining physician, if not a treating physician. AR 600-04. Regardless, for both examining and treating physicians, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of the physician. *Lester*, 81 F.3d at 830-31 (citations omitted). If contradicted by another doctor, the ALJ can only reject a physician's opinion for "specific and legitimate" reasons that are supported by substantial evidence in the record. *Id.* at 830-31 (citations omitted). Here, the opinions of Drs. Baer and Oda are both contradicted, and the ALJ therefore need only provide specific and legitimate reasons supported by the evidence.

Dr. Baer provided Castillo with two "To Whom it May Concern" Disability Certificates. In the first, dated June 28, 2004, he states that Castillo has been under his care since December 11, 1995, and that she remains on Temporary Total Disability until August 2, 2004. AR 577. In the second, dated July 29, 2004, Dr. Baer states that Castillo remains on Temporary Total Disability until August 30, 2004. AR 576. No treatment records were provided. The ALJ rejected Dr. Baer's opinion because he "did not provide any objective medical findings in support of his conclusion of 'temporary total disability.'" AR 67. The Court finds that the ALJ properly afforded little weight to the opinion of Dr. Baer because it was not supported by specific medical findings or objective

evidence. An ALJ need not accept a physician's opinion that is conclusory and brief and unsupported by clinical findings. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected physician's opinion that claimant could not perform sedentary work because it "was unsupported by rationale or treatment notes, and offered no objective medical findings"); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194-95 (9th Cir. 2004) (ALJ properly discounted physician's opinion which was in the form of a checklist and lacked substantive medical findings to support her conclusion).

Further, as discussed above, the ALJ's decision is supported by substantial evidence in the record. Dr. Gallagher concluded that Castillo's RFC was at the light level with "frequent but not constant use of both hands for handling and fingering." AR 446. Dr. Swartz advised Castillo that her residuals were "quite mild and not to be the level that would pre[v]ent her from re-entering the work force." AR 485. Dr. Swartz states that she reviewed Castillo's medical file, including records from Dr. Baer, but found her conditions to be "under reasonably good control" and that Castillo "would be capable of returning to work," but at a less physically demanding job. AR 491-96. James M. Glick, M.D., completed an Independent Medical Examination on September 27, 2006. AR 598-611. Dr. Glick determined that Castillo could not return to her prior position as a laundry worker, but could perform sedentary work with no long periods of standing or heavy lifting. AR 610. As this evidence contradicts Dr. Baer's disability certificates, the Court finds that substantial evidence supports the ALJ's specific and legitimate reasons for rejecting his opinion.

The same is true for Dr. Oda, who conducted an orthopedic evaluation of Castillo on June 14, 2005. AR 569-72. In her report, Dr. Oda opined that Castillo had a disability "with respect to her hands bilaterally which would preclude prolonged gripping, twisting, pushing/pulling, and fine manipulative activities such as writing and keyboarding, contemplating that she has lost one-half of her pre-injury capacity for these activities." AR 571. The ALJ rejected this opinion, finding that it "followed recitation of rather normal findings, such as improvement in medial conduction volocities to the normal range and moderate post-operative improvement." AR 67. The ALJ found that "while a convincing argument can be made that [Castillo] is restricted to frequent fine and gross

Page 10 of 19

1 manipulation, the evidence does not support an allegation that [she] is unable to undertake writing or
2 keyboarding." AR 67. As discussed above, the evidence from Drs. Gallagher, Swartz, and Glick
3 contradicts this finding.

4 Based on this analysis, the Court finds that the ALJ properly determined that Castillo retains
5 the RFC to perform light work.

6     2.    <u>Credibility</u>

7 In evaluating Castillo's RFC, the ALJ rejected her allegations as to how her impairments
8 affected her functioning. AR 66. At the hearing, Castillo testified that she had no strength in her
9 hands and that she was unable to hold anything. AR 145-46. Castillo also testified that her right
10 ankle pain prevented her from working or standing too long. AR 146. The ALJ found that the
11 evidence supported Castillo's symptoms, but that her statements concerning the intensity,
12 persistence, and limiting effects of these symptoms was not credible to the extent they were
13 inconsistent with the RFC. AR 66.

14 A two-step analysis is used when determining whether a claimant's testimony regarding their
15 subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir.
16 2007). First, it must be determined "whether the claimant has presented objective medical evidence
17 of an underlying impairment 'which could reasonably be expected to produce the pain or other
18 symptoms alleged.'" *Id*. at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en
19 banc)). A claimant does not need to "'show that her impairment could reasonably be expected to
20 cause the severity of the symptom she has alleged; she need only show that it could reasonably have
21 caused some degree of the symptom.'" *Id*. (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.
22 1996)).

23 Second, if the claimant has met the first step and there is no evidence of malingering, "'the
24 ALJ can reject the claimant's testimony about the severity of her symptoms only by offering
25 specific, clear and convincing reasons for doing so.'" *Id*. (quoting *Smolen*, 80 F.3d at 1281). "The
26 ALJ must state specifically which symptom testimony is not credible and what facts in the record
27 lead to that conclusion." *Smolen*, 80 F.3d at 1284. In evaluating subjective symptom testimony, the

28

1  ALJ must consider (1) the nature, location, onset, duration frequency, radiation, and intensity of the
2  pain; (2) precipitating and aggravating factors (movement, activity, environmental factors); (3) type,
3  dosage, and adverse side-effects of any pain medication; (4) treatment, other than medication, for
4  relief of pain; (5) functional restrictions; and (6) the plaintiff's daily activities. *Id*. The ALJ's
5  findings must be "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the
6  claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's
7  testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citations omitted). Where the
8  ALJ "has made specific findings justifying a decision to disbelieve an allegation of excess pain, and
9  those findings are supported by substantial evidence in the record," courts must not engage in
10 second-guessing. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

11      Here, at the first step, the ALJ determined that Castillo suffered from residuals of carpal
12 tunnel surgery and residuals of right ankle fracture. AR 64. Since the ALJ did not find that the
13 record contained any affirmative evidence of malingering, and the Commissioner has not pointed to
14 any, the issue before the Court is whether the ALJ provided reasons for his adverse credibility
15 determination that satisfy the "clear and convincing" standard set forth above.

16      The ALJ provided several reasons to reject Castillo's subjective complaints. AR 66-67.
17 First, the ALJ pointed out that Castillo's disabling pain and limitations were not fully supported by
18 the medical records. AR 66. For example, Dr. Gallagher, noting that Castillo complained about
19 numbness and weakness of both hands due to carpal tunnel syndrome, pointed out that a pattern of
20 normal or near normal medical findings was inconsistent with that claim. AR 446. Dr. Gallagher
21 also reported that there was no evidence of a continuous 12-month interval from the alleged onset
22 date through the date last insured that Castillo had not reasonably been able to perform light work
23 activity with frequent, but not constant use of both hands for fingering and handling. AR 446.
24 While subjective pain testimony cannot be rejected on the sole ground that it is not fully
25 corroborated by objective medical evidence, the medical evidence is still a relevant factor in
26 determining the severity of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261
27 F.3d 853, 857 (9th Cir. 2001).

The ALJ also considered the opinion of Daniel Shalom, M.D. AR 66. Dr. Shalom conducted three sets of electrodiagnostic tests on Castillo. AR 578-81. Dr. Shalom reported that electrodiagnostic testing showed improvement in the median conduction velocities, which were in the normal range bilaterally, as well as improvement in the bilateral median sensory conduction velocities, although the latter continued to be abnormally low. AR 578-79. Dr. Shalom concluded that the studies of the median nerves reflected postoperative improvement bilaterally. AR 579. Based on this evidence, the ALJ concluded Plaintiff's condition was treatable and had improved. AR 66.

Additionally, the ALJ considered Dr. Swartz's opinion. AR 66. Dr. Swartz examined Castillo on October 30, 2006 and reported:

> I advised Ms. Castillo that I found her residuals to be quite mild and not to the level that would pre[v]ent her from re-entering the work force. I advised Ms. Castillo that it is understandable that she may have some difficulty returning to work as a laundry worker. It is also recognized that Ms. Castillo has tried to get lighter work with the City and County of San Francisco and they have turned her down. I have advised Ms. Castillo that because they turned her down does not automatically preclude her from gainful employment. I advised that she could work at the same level of job which she was applying for and for which she was turned down. I advised that I believe that there is a great variety of lighter jobs which she can perform.

AR 485. Dr. Swartz concluded that Castillo's "subjective complaints outweigh her objective findings." AR 485. In assessing Castillo's credibility, the ALJ properly considered these medical records. *See* 20 C.F.R. §§ 404.1529(c)(1) & (2) (requiring consideration of medical history, medical signs and laboratory findings, and objective medical evidence in evaluating the extent and impact of alleged pain); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (upholding credibility assessment where results of medical tests of functioning did not support subjective allegation); *Batson*, 359 F.3d at 1196 (holding ALJ properly relied on objective medical evidence and medical opinions in determining credibility); *Nyman v. Heckler*, 779 F.2d 528, 530 (9th Cir. 1986) (ALJ required to consider medical evidence in assessing subjective complaints).

The ALJ also observed that Castillo's complaints about her ankle impairments were rather vague. AR 67. When seen by Dr. Glick, Castillo said that pain kept her awake at night "sometimes." AR 599. She complained about swelling, but was unable to explain when the ankle

became swollen. AR 599. Castillo also admitted to Dr. Glick that the ankle did not feel as if it might "give-way." AR 599. Actual examination of the ankle showed no objective tenderness, no swelling or edema, no deformities and no instability. AR 609. Based on this evidence, the ALJ found unconvincing Castillo's testimony that her right ankle pain prevented her from working or standing too long. AR 67. An ALJ may disregard unsupported, self-serving statements. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1464 (9th Cir. 1995).

Based on this analysis, the Court finds that the ALJ articulated several specific, clear and convincing reasons for partially rejecting Castillo's pain testimony. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998). Accordingly, the Court finds that the ALJ's determination at step four is supported by substantial evidence and free of legal error.

**E.    Step Five**

In the fifth step of the analysis, the burden shifts to the ALJ to prove that there are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the medically determinable impairments and symptoms, functional limitations, age, education, work experience and skills. 20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c). There are two ways for the ALJ to show other jobs in significant numbers in the national economy: (1) by reference to the Medical–Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2; or (2) by the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant is able to adjust to other work in the national economy, the claimant will not be found disabled. 20 C.F.R. § 404.1520(g)(1).

In this case, the ALJ took testimony from a vocational expert. AR 150-54. "[T]he ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett*, 180 F.3d at 1101. "At the hearing, the ALJ poses hypothetical questions to the vocational expert that 'set out all of the claimant's impairments' for the vocational expert's consideration." *Id.* (quoting *Gamer v. Sec'y of Health and Human Servs.*, 815 F.2d 1275, 1279 (9th Cir. 1987)). The vocational expert then testifies as to what kinds of jobs the claimant can perform

and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of not disabled. *Id.* (citation omitted).

"The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Id.* (citation omitted). However, the ALJ need only include those limitations supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (2006). If the ALJ does not include all claimed impairments in his hypothetical, he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). Consequently, "if the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value." *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

Here, the ALJ provided two hypotheticals. The first is as follows:

> [W]e've got a hypothetical claimant age 46, the alleged date of onset with 12 years of education, same past work experience as the claimant. It's been opined that this hypothetical claimant can lift and carry twenty pounds occasionally, ten pounds frequently, stand or walk for six hours out of eight, sit for six, can occasionally climb ropes, ladders and scaffolds, handling, gross manipulation is limited to frequent but not constant use of hand controls bilaterally, and fingering, fine manipulation is limited to frequent but not constant bilaterally. Given those restrictions and those alone, could this hypothetical claimant return to any past relevant work?

AR 150. The vocational expert answered that the hypothetical claimant could not return to past relevant work, but could perform other work, including a photocopy machine operator (Dictionary of Occupational Titles ("DOT")[5] 207.685-014, 1991 WL 671745) and a ticket taker (DOT 344.667-010, 1991 WL 672863). AR 150-51. The ALJ confirmed with the vocational expert that these jobs are feasible for someone who has a working knowledge of English but is not fluent. AR 151.

---

[5] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990). The DOT classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1). The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles." *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

1  The ALJ then provided the following second hypothetical:

2  Our second hypothetical is the same as the first except it's ten pounds occasionally, less than ten pounds frequently, stand or walk for two hours out of eight, sit for six. And again, with the same limitations as far as being on the hands, the climbing and the English use, would there by any work under that hypothetical?

AR 151. The vocational expert answered that the hypothetical claimant could perform other work, including table worker or spotter (DOT 739.687-182, 1991 WL 680217) and document preparer (DOT 249.587-018, 1991 WL 672349). AR 151-52.

In his decision, the ALJ considered the vocational expert's testimony and determined that Castillo could perform alternative work existing in significant numbers in the economy. AR 69. Based on the DOT job descriptions for the positions provided by the vocational expert, which are all classified as either light or sedentary work, the Court finds that they are consistent with Castillo's RFC. Further, the ALJ's hypothetical to the vocational expert was consistent with Castillo's limitations as reflected by the medical evidence of record. AR 65. Further, for both hypotheticals, the ALJ confirmed with the vocational expert that her testimony was consistent with the DOT. AR 152; *see Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir.2007) (citing Social Security Ruling 00–4p) (an ALJ may rely on a vocational expert's testimony regarding the requirements of a particular job after first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefore).

Finally, the Court finds that the ALJ properly considered the DOT jobs provided by the vocational expert because they exist in significant numbers. The vocational expert provided the following numbers for each position:

| Position | Local Economy | National Economy |
|---|---|---|
| Photocopy Machine Operator | 610 | 90,470 |
| Ticket Taker | 970 | 109,290 |
| Table Worker or Spotter | 3,930 | 472,900 |
| Document Preparer | 23,490 | 2,900,000 |

AR 151-52. "[T]he 'significant number of jobs' can be either regional jobs (the region where a

1 claimant resides) or in several regions of the country (national jobs)." *Beltran v. Astrue*, 676 F.3d
2 1203, 1206 (9th Cir. 2012) (citing 42 U.S.C. § 423(d)(2)(A)). If either of the two numbers is
3 "significant," then the ALJ's decision must be upheld. *Id.* Here, the Court finds that all positions
4 exist in significant numbers, whether at the regional or national level. *See, e.g., Barker*, 882 F.2d at
5 1479 (1,266 jobs regionally is a significant number of jobs); *Martinez v. Heckler*, 807 F.2d 771, 775
6 (9th Cir. 1987) (amended) (3,750 to 4,250 jobs was a significant number of regional jobs); *Thomas*,
7 278 F.3d at 960 (1,300 jobs in region and 622,000 in the national economy); *Moncada v. Chater*, 60
8 F.3d 521, 524 (9th Cir. 1995) (2,300 jobs in region and 64,000 jobs nationwide). Thus, substantial
9 evidence supports the ALJ's step five determination. *See Rollins*, 261 F.3d at 858 ("Because the
10 ALJ included all of the limitations that he found to exist, and because his findings were supported by
11 substantial evidence, the ALJ did not err in omitting the other limitations that [the plaintiff] had
12 claimed, but had failed to prove.").

**F. Summary**

14 Based on the analysis above, the Court finds that the ALJ's five-step sequential analysis is
15 free of legal error, and that his decision is supported by substantial evidence.

**G. Insured Status**

17 As part of her Motion, Castillo argues that a disability decision issued by the Office of
18 Administrative Hearings for the State of California, dated August 3, 2007, supports her present
19 disability claim. Pl.'s Mot. at 6. In the decision, ALJ Steven Owyang grants Castillo's application
20 for state disability retirement, dated June 21, 2006. AR 274-75. However, as stated above,
21 Castillo's date last insured was December 31, 2005. AR 28. To collect benefits, Castillo must prove
22 that she became disabled prior to the expiration of her insured status. 20 C.F.R. § 404.320(b);
23 *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998); *Tidwell*, 161 F.3d at
24 601. The August 3 decision refers to injuries Castillo suffered as early as 1990, but the only medical
25 evidence to which it refers is a September 27, 2006 examination performed by Dr. Glick. AR 275.
26 Dr. Glick opined that Castillo is unable to perform her former Laundry Worker position. AR 275.
27 However, as discussed above, Dr. Glick also determined that Castillo could perform other types of

Page 17 of 19

1 work. AR 610. Thus, the August 3 decision does not establish that Castillo was disabled prior to
2 her date last insured.

3 In addition, Castillo has proffered a letter from Physician's Assistant Linda Deivert, dated
4 April 1, 2010. Pl.'s Mot. at 20. In the letter, Ms. Deivert requests that the Agency reconsider
5 Castillo's application for disability and notes that she had an abdominal hysterectomy due to uterine
6 tumors on October 22, 2008. *Id.* Ms. Deivert states that it is not possible for Castillo to be
7 employed. *Id.* The Court notes that this letter was written five years after Castillo's date last
8 insured and could not have been reviewed by the ALJ because the hearing took place in 2009. Her
9 argument appears to be that the new evidence proffered establishes something contrary to the ALJ's
10 findings.

11 This Court may remand based on evidence that was not before the ALJ only if Castillo
12 demonstrates that the evidence is material and that good cause exists for her failure to present it in a
13 prior proceeding. 42 U.S.C. § 405(g); *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). In
14 order to be "material," the evidence must present a reasonable possibility that it would have changed
15 the outcome if it had been considered by the fact finder. *Booz v. Sec'y of Health and Human Servs.*,
16 734 F.2d 1378, 1380-81 (9th Cir. 1984). In order to show "good cause" for failing to present the
17 evidence earlier, a claimant must establish that she could not have obtained the evidence at the time
18 of the administrative proceeding. *Booz*, 734 F.2d at 1380; *Clem v. Sullivan*, 894 F.2d 328, 332 (9th
19 Cir. 1990). Here, Castillo's hearing before the ALJ occurred on August 21, 2009. AR 141. As the
20 later is dated after the hearing, it is clear that Castillo could not have presented it earlier. However,
21 it is also unlikely that it would have changed the ALJ's decision. Castillo's date last insured was
22 December 31, 2005, and Ms. Deivert's letter does not establish that she became disabled prior to the
23 expiration of her insured status. Further, in making his decision, the ALJ considered the medical
24 evidence from Ms. Deivert (from 1999 to 2007), but found that it did not support a finding of
25 disability. AR 64, 336-53, 356-59, 362-70, 374-75, 378-82, 384-91. Thus, Ms. Deivert's letter does
26 not present a reasonable possibility that it would have changed the outcome if it had been considered
27 by the ALJ, and remand is inappropriate. *Booz*, 734 F.2d at 1380-81.

28

## CONCLUSION

Based on the foregoing analysis, the Court hereby DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment. The decision of the ALJ is AFFIRMED.

**IT IS SO ORDERED.**

Dated: November 16, 2012

MARIA-ELENA JAMES
United States Magistrate Judge